# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

3M COMPANY,

                Plaintiff,

    v.

ACE AMERICAN INSURANCE COMPANY, AIG PROPERTY CASUALTY COMPANY, AIU INSURANCE COMPANY, AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, ALLIANZ VERSICHERUNGS-AG, ALLSTATE INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, WELLFLEET NEW YORK INSURANCE COMPANY, CENTURY INDEMNITY COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICIES SOLD TO 3M, CERTAIN LONDON MARKET INSURANCE COMPANIES SUBSCRIBING TO POLICIES SOLD TO 3M, CERTAIN EUROPEAN MARKET INSURANCE COMPANIES SUBSCRIBING TO POLICIES SOLD TO 3M, CHICAGO INSURANCE COMPANY, EMPLOYERS INSURANCE COMPANY OF WAUSAU, EMPLOYERS MUTUAL CASUALTY COMPANY, EVANSTON INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, HDI GLOBAL SE, INSCO LIMITED, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, INTERSTATE FIRE & CASUALTY COMPANY, MAYA ASSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, NEW HAMPSHIRE INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, REPWEST INSURANCE COMPANY, STARR INDEMNITY & LIABILITY COMPANY, THE AMERICAN INSURANCE COMPANY, TIG INSURANCE COMPANY, TRANSPORT INSURANCE

Civil Action No.: _____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMPANY, TRAVELERS CASUALTY
AND SURETY COMPANY, THE
TRAVELERS INDEMNITY COMPANY,
UTICA MUTUAL INSURANCE
COMPANY, WESTPORT INSURANCE
CORPORATION, ZURICH AMERICAN
INSURANCE COMPANY, ZURICH
REINSURANCE COMPANY LTD.,
CONTINENTAL INSURANCE
COMPANY, COLUMBIA CASUALTY
COMPANY, FEDERAL INSURANCE
COMPANY, GREAT LAKES
REINSURANCE (UK) PLC, OAKWOOD
INSURANCE COMPANY, SWISS RE
ASIA PTE. LTD., SWISS REINSURANCE
COMPANY, LTD., AXA BELGIUM,
SEGUROS BANORTE, S.A. de C.V.,

Defendants.

Plaintiff 3M Company ("3M") (formerly known as Minnesota Mining and Manufacturing Company), on behalf of itself and its subsidiaries and affiliates, by and through its attorneys, brings this lawsuit against the defendant insurance companies (individually identified below and referred to herein as an "Insurer" or "the Insurers") for declaratory relief and breach of contract damages, and in support, alleges as follows:

## NATURE OF THE ACTION

1.      This is an insurance dispute between 3M and the Insurers regarding the coverage the Insurers owe for defense costs and liabilities that 3M has incurred, and will continue to incur, in connection with claims that have been, and continue to be, brought against 3M, including thousands of lawsuits currently pending before this Court in *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, Docket No. 2:18-mn-2873-RMG (the "AFFF MDL").

2.      3M is a multinational manufacturing company committed to creating technology and products that enhance businesses and improve lives across the globe. Applying scientific and technological expertise, 3M has developed more than 60,000 industrial and consumer products that are used in homes, schools, hospitals, and business on a daily basis. 3M's wide-ranging

products include, without limitation, fabric repellents, adhesives, adhesive tapes, fire safety products, and much more.

3.    In recent years, thousands of claimants have brought lawsuits against 3M seeking damages for property damage, bodily injury, or personal injury, or some combination thereof, allegedly stemming from exposure to per and polyfluoroalkyl substances ("PFAS") manufactured by 3M (collectively, "PFAS Claims").

4.    More specifically, the PFAS Claims against 3M include, without limitation, lawsuits brought by individuals, public, quasi-public and private water providers, state and municipal government authorities, and others—including lawsuits in the AFFF MDL—who allege to have suffered property damage (including damage to drinking water or natural resources), bodily injury, or personal injury, or some combination thereof, that they attribute to, among other things (i) the use of products containing PFAS, including without limitation life-saving aqueous film-forming foam ("AFFF") used for fire suppression and Scotchgard™ fabricant repellants and/or (ii) 3M's operations or activities in and around certain 3M facilities that allegedly historically manufactured, used, or spilled PFAS. Such facilities include without limitation 3M sites in and around Cottage Grove, Minnesota; Decatur, Alabama; Guin, Alabama; Springfield, Missouri; Cordova, Illinois; Corona, California; Antwerp (Zwijndrecht), Belgium; and Gendorf, Germany.

5.    For decades, 3M purchased comprehensive liability insurance from the Insurers to protect 3M against, among other things, product liability claims and/or general liability claims seeking damages because of property damage, bodily injury, or personal injury, or some combination thereof, that allegedly took place during their policy periods, and was caused by an

occurrence. For the purposes of this coverage action only, the Insurers providing such coverage are referred to as the "Pre-1986 Insurers" and their policies as "Pre-1986 Policies."

6.      The Pre-1986 Policies are standard-form insurance policies that generally provide coverage subject to the same or substantially similar terms. Pursuant to the terms of the Pre-1986 Policies, the Pre-1986 Insurers have a duty to indemnify 3M, up to the applicable limits of their respective policies, for any settlements or judgments that 3M becomes legally obligated to pay in connection with the PFAS Claims. Certain Pre-1986 Insurers also have a duty to defend 3M, or the duty to pay or reimburse the defense costs that 3M has incurred, in connection with the defense of underlying PFAS Claims.

7.      Notwithstanding their obligations under the Pre-1986 Policies, the Pre-1986 Insurers have failed and/or refused to provide and/or acknowledge the defense and/or indemnity coverage owed to 3M in connection with the PFAS Claims.

8.      After 1986, 3M also purchased liability insurance policies covering, among other things, claims seeking damages because of property damage, bodily injury, or personal injury or some combination thereof, caused by an occurrence, when those claims or occurrence were first reported to those Insurers during their policy period. For the purposes of this coverage action only, the Insurers providing such coverage are referred to as the "Occurrence Insurers" and their policies as "Occurrence Policies."

9.      The Occurrence Policies are insurance policies that generally provide coverage subject to the same or substantially similar terms. Pursuant to the terms of the Occurrence Policies, the Occurrence Insurers have a duty to indemnify 3M, up to the applicable limits of their respective policies, for any settlements or judgments that 3M becomes legally obligated to pay in connection with the PFAS Claims. The Occurrence Insurers also have a duty to defend 3M, or the duty to pay

or reimburse the defense costs that 3M has incurred, in connection with the defense of underlying PFAS Claims.

10.     Notwithstanding their obligations under the Occurrence Policies, the Occurrence Insurers have failed and/or refused to provide and/or acknowledge the defense and/or indemnity coverage owed to 3M in connection with the PFAS Claims.

11.     3M timely paid all premiums and satisfied all terms, conditions, or prerequisites for coverage under the Pre-1986 Policies and Occurrence Policies. All conditions precedent to this action have been met. Accordingly, 3M is entitled to defense and/or indemnity coverage for the PFAS Claims, including those in the AFFF MDL, pursuant to the Pre-1986 Policies and Occurrence Policies.

12.     3M brings this action for breach of contract and/or declaratory relief against the Pre-1986 Insurers and Occurrence Insurers for failing/refusing to honor their contractual obligations with respect to the PFAS Claims, including those in the AFFF MDL.

## THE PARTIES

13.     3M is a corporation organized under the laws of the State of Delaware, with its principal place of business in Maplewood, Minnesota.

14.     Upon information and belief, Defendant ACE American Insurance Company, formerly known as the CIGNA Insurance Company, is a Pennsylvania corporation with its primary place of business in Philadelphia, Pennsylvania. Upon information and belief, Defendant ACE American Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

15.    Upon information and belief, Defendant AIG Property Casualty Company, formerly known as AIG Casualty Company, formerly known as Birmingham Fire Insurance Company of Pennsylvania, formerly known as Birmingham Fire Insurance Company, is an Illinois corporation with its principal place of business in New York, New York. Upon information and belief, Defendant AIG Property Casualty Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

16.    Upon information and belief, Defendant AIU Insurance Company is a New York corporation with its principal place of business in New York, New York. Upon information and belief, Defendant AIU Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

17.    Upon information and belief, Defendant American International Specialty Lines Insurance Company, known also as AIG Specialty Insurance Company, is an Illinois corporation with its principal place of business in New York, New York. Upon information and belief, Defendant American International Specialty Lines Insurance Company does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which

the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

18.     Upon information and belief, Defendant Allianz Versicherungs-AG (otherwise known as Allianz Versicherungs-Aktiengesellschaft, Munich) is a German company with its principal place of business in Munich, Germany. Upon information and belief, Defendant Allianz Versicherungs-AG does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Allianz Versicherungs-AG, issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

19.     Upon information and belief, Defendant Allstate Insurance Company, as successor in interest to Northbrook Excess & Surplus Insurance Company, formerly known as Northbrook Insurance Company, is an Illinois corporation with its principal place of business in Northbrook, Illinois. Upon information and belief, Defendant Allstate Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

20.     Upon information and belief, Defendant American Home Assurance Company, also known as American Home Insurance Company, is a New York corporation with its principal place of business in New York, New York. Upon information and belief, Defendant American Home Assurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired

responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

21.     Upon information and belief, Defendant Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company is a New York corporation with its principal place of business in Fort Wayne, Indiana. Upon information and belief, Defendant Wellfleet New York Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

22.     Upon information and belief, Defendant Century Indemnity Company as successor to CCI Insurance Company, as successor to Insurance Company of North America and also as successor to Indemnity Insurance Company of North America and further as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company, is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Upon information and belief, Defendant Century Indemnity Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

23.     Upon information and belief, Defendants Certain Underwriters at Lloyds, London Subscribing to Policies Sold to 3M are members of insurance syndicates incorporated under the

laws of the United Kingdom or other foreign countries with their principal places of business in the United Kingdom or elsewhere outside the United States that engage (or historically engaged) in insurance underwriting through the Lloyd's insurance market in London, England. Upon information and belief, Defendants Certain Underwriters at Lloyds, London Subscribing to Policies Sold to 3M do business in South Carolina—including without limitation by insuring risks in South Carolina.

24.     Upon information and belief, Defendants Certain London Market Companies Subscribing to Policies Sold to 3M are incorporated under the laws of the United Kingdom or other foreign countries with their principal places of business in the United Kingdom or elsewhere outside the United States that place (or historically placed) insurance in the London insurance market.[1] Upon information and belief, Defendants Certain London Market Companies Subscribing to Policies Sold to 3M do business in South Carolina—including without limitation by insuring risks in South Carolina.

25.     Defendants Certain Underwriters at Lloyds, London Subscribing to Policies Sold to 3M and Defendants Certain London Market Companies Subscribing to Policies Sold to 3M (collectively, the "London Insurers"), issued or acquired responsibility for insurance policies issued to 3M identified in the attached **Exhibit A** for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

26.     The London Insurers who subscribed to policies identified in Exhibit A include: Accredited Insurance (Europe) Limited, as successor in interest to Ancon Insurance Company

---

[1] With the exception of Bison Insurance Ltd., which—upon information and belief— is a South Carolina corporation with its principal place of business in Charleston, South Carolina.

(UK) Limited; Allianz Suisse Insurance Company Limited, formerly known as Helvetia Accident Swiss Insurance Company Ltd.; Argonaut Insurance Company, as successor by merger to Select Markets Insurance Company, formerly known as Argonaut-Northwest Insurance Company; Assicurazioni Generali S.P.A.; Assurances Generales de France; Bishopsgate Insurance Company Ltd.; Bison Insurance Company, Ltd.; Brittany Insurance Company Limited; Catalina Worthing Insurance Ltd. f/k/a HFPI, as Part VII Transferee of Excess Insurance Company Ltd. and/or London & Edinburgh Insurance Company (as Successor to London & Edinburgh General Insurance Company Ltd.); Cavello Bay Reinsurance Limited as legal successor in interest to all rights and liabilities of Brittany Insurance Company Limited and Harper Insurance Limited, formerly known as Turegum Insurance Company; Chubb European Group Ltd., formerly known as ACE European Group, Ltd., as successor in interest to ACE Insurance, SA-NV, formerly known as CIGNA Insurance Company of Europe, SA-NV; Companhia De Seguros Fidelidade SA, formerly known as Fidelidade Insurance Company of Lisbon; Delta-Lloyd Non-Life Insurance Company Limited; National Casualty Company Limited, formerly known as National Casualty Company of Detroit; National Casualty Company of America Ltd.; Mitsui Sumitomo Insurance Company (Europe), Limited, formerly known as Taisho Marine & Fire Insurance Company (UK) Limited; RiverStone Insurance (UK) Limited, as successor in interest to Eagle Star Insurance Company Limited and Home & Overseas Insurance Company Limited; River Thames Insurance Company Limited; Scottish Lion Insurance Company, Ltd.; Storebrand Insurance Co. (UK) Ltd.; Tenecom Limited, formerly known as Yasuda Fire & Marine Insurance Company (U.K.) Ltd, and as successor to Winterthur Swiss Insurance Company, formerly known as Accident & Casualty Insurance Company of Winterthur; The Dominion Insurance Company Limited.; Tokio Marine Kiln Insurance Limited, formerly known as Tokio Marine & Fire Insurance Company (UK)

Limited; Tokio Marine & Nichido Fire Insurance Company Limited, as successor to Nichido Fire & Marine Insurance Company Limited; Travelers Insurance Company Limited, formerly known as St. Paul Travelers Insurance Company Limited, formerly known as St. Paul International Insurance Company Limited, formerly known as St. Katherine Insurance Co., Ltd.

27.    Upon information and belief, Defendants Certain European Market Insurance Companies Subscribing to Policies Sold to 3M are incorporated under the laws of foreign countries with their principal places of business outside the United States that place (or historically placed) insurance in European insurance markets. Upon information and belief, Defendants Certain European Market Insurance Companies Subscribing to Policies Sold to 3M do business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendants Certain European Market Insurance Companies Subscribing to Policies Sold to 3M issued or acquired responsibility for insurance policies issued to 3M identified in the attached Exhibit A for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof. Defendants Certain European Market Insurance Companies Subscribing to Policies Sold to 3M identified in Exhibit A include: Aegon Schadeverzekering, N.V., formerly known as Ago Schaderverzekering-Maatschappij, N.V.; Allianz Global Corporate and Specialty (France), as successor in interest to Compagnie d'Assurances Maritimes, Aeriennes et Terrestres (CAMAT); Allianz IARD S.A., as successor in interest to La Fonciere, La Preservatrice, and Ste. Lilloise D'Assurances et De Reassurances; Allianz International Insurance Company Limited; AXA Corporate Solutions Assurance, as successor in interest to Groupe Drouot, L'Europe, Le Secours, Union Des Assurances de Paris, and Abeille-Paix Reassurances; Bloemers and Co. Assuradeuren B.V.; Caisse Industrielle d'Assurance Mutuelle, now known as CIAM; Compagnie Europeenne

d'Assurances Industrielles S.A.; Delta-Lloyd Schadeverzekering N.V.; Elvia Zwitserse Verzekering Maatschappij Zurich, formerly known as Helvetia Ongevallen; ERGO Versicherung AG, as successor in interest to Victoria Versicherung AG, formerly known as Victoria Feuerversicherungs-Aktien-Gesellshaft; Generali IARD, as successor in interest to Le Continent and La Concorde; Hannover International Insurance (Nederland) NV; Nassau Verzekering Maatschappij N.V.; Helvetia Swiss Insurance Company, as successor in interest to Alba General Insurance Company Limited; MMA IARD Assurances Mutuelles, as successor to La Mutuelle Generale Francaise des Accidents; N.V. Schadeverzekering Maatschappij, also known as W. Haagman & Co.; Nieuwe Hollandse Lloyd Schadeverzekeringmij NV; and Tulleners Van Buren Assuradeuren En Averij Agenten.

28.     Upon information and belief, Defendant Chicago Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Defendant Chicago Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

29.     Upon information and belief, Defendant Employers Insurance Company of Wausau, formerly known as Employers Insurance of Wausau, A Mutual Company and Employers Mutual Liability Insurance Company of Wisconsin, is a Wisconsin corporation with its principal place of business in Boston, Massachusetts. Upon information and belief, Defendant Employers Insurance Company of Wausau is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired

responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

30.    Upon information and belief, Defendant Employers Mutual Casualty Company is an Iowa corporation with its principal place of business in Des Moines, Iowa. Upon information and belief, Defendant Employers Mutual Casualty Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

31.    Upon information and belief, Defendant Evanston Insurance Company is an Illinois corporation with its principal place of business in Rosemont, Illinois. Upon information and belief, Evanston Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

32.    Upon information and belief, Defendant Fireman's Fund Insurance Company is an Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Defendant Fireman's Fund Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which

the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

33.    Upon information and belief, Defendant Granite State Insurance Company is an Illinois corporation with its principal place of business in New York, New York. Upon information and belief, Defendant Granite State Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

34.    Upon information and belief, Defendant HDI Global SE, as successor to Gerling-Konzern Allgemeine Versicherungs AG, is a German company with its principal place of business in Hannover, Germany. Upon information and belief, Defendant HDI Global SE does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, HDI Global SE issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

35.    Upon information and belief, Defendant INSCO Limited is a Bermuda company with its principal place of business in Hamilton, Bermuda. Upon information and belief, Defendant INSCO Limited does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant INSCO Limited issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS

Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

36.     Upon information and belief, Defendant Insurance Company of the State of Pennsylvania is an Illinois corporation with its principal place of business in New York, New York. Upon information and belief, Defendant Insurance Company of the State of Pennsylvania is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

37.     Upon information and belief, Defendant Interstate Fire & Casualty Company is an Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Defendant Interstate Fire & Casualty Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

38.     Upon information and belief, Defendant Maya Assurance Company, as successor in interest to the Insurance Corporation of Ireland, Ltd., also known as Merrion Insurance Company, is a New York corporation with its principal place of business in Long Island City, New York. Upon information and belief, Defendant Maya Assurance Company does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Maya Assurance Company issued or acquired responsibility for insurance

policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

39.     Upon information and belief, Defendant National Union Fire Insurance Company of Pittsburgh, PA, also known as National Union Fire Insurance Company, individually and as successor in interest by merger to Landmark Insurance Company, is a Pennsylvania corporation with its principal place of business in New York, New York. Upon information and belief, Defendant National Union Fire Insurance Company of Pittsburgh, PA is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

40.     Upon information and belief, Defendant New Hampshire Insurance Company is an Illinois corporation with its principal place of business in New York, New York. Upon information and belief, Defendant New Hampshire Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

41.     Upon information and belief, Defendant Old Republic Insurance Company is a Pennsylvania corporation with its principal place of business in Greensburg, Pennsylvania. Upon information and belief, Defendant Old Republic Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South

Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

42.    Upon information and belief, Defendant RepWest Insurance Company, formerly known as Republic Western Insurance Company, is an Arizona corporation with its principal place of business in Phoenix, Arizona. Upon information and belief, Defendant RepWest Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

43.    Upon information and belief, Defendant Starr Indemnity & Liability Company, as successor in interest to Republic Insurance Company of Delaware, Inc., formerly known as Republic Insurance Company, is a Texas corporation with its principal place of business in Dallas, Texas. Upon information and belief, Defendant Starr Indemnity & Liability Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

44.    Upon information and belief, Defendant The American Insurance Company is an Ohio corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Defendant The American Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued

or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

45.    Upon information and belief, Defendant TIG Insurance Company, as (i) successor in interest to Fairmont Premier Insurance Company, formerly known as Transamerica Premier Insurance Company, (ii) successor by merger to International Surplus Lines Insurance Company, and (iii) successor in interest by merger to Mt. McKinley Insurance Company, formerly known as Gibraltar Casualty Company, is a California corporation with its principal place of business in Houston, Texas. Upon information and belief, Defendant TIG Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

46.    Upon information and belief, Defendant Transport Insurance Company, as successor to Transport Indemnity Company, is an Ohio corporation with its principal place of business in Philadelphia, Pennsylvania. Upon information and belief, Defendant Transport Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

47.    Upon information and belief, Defendant Travelers Casualty and Surety Company, as successor in interest to Aetna Casualty & Surety Company, is a Connecticut corporation with

its principal place of business in Hartford, Connecticut. Upon information and belief, Defendant Travelers Casualty and Surety Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

48.    Upon information and belief, Defendant The Travelers Indemnity Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Upon information and belief, Defendant The Travelers Indemnity Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

49.    Upon information and belief, Defendant Utica Mutual Insurance Company is a New York corporation with its principal place of business in New Hartford, New York. Upon information and belief, Defendant Utica Mutual Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

50.    Upon information and belief, Defendant Westport Insurance Corporation, formerly known as Puritan Insurance Company, formerly known as The Manhattan Fire & Marine Insurance Company, is a Missouri corporation with its principal place of business in Overland Park, Kansas.

Upon information and belief, Defendant Westport Insurance Corporation is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

51.     Upon information and belief, Defendant Zurich American Insurance Company, as successor to Zurich Insurance Company (U.S. Branch), is a New York corporation with its principal place of business in Schaumberg, Illinois. Upon information and belief, Defendant Zurich American Insurance Company is licensed to do business and does business in South Carolina— including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

52.     Upon information and belief, Defendant Zurich Reinsurance Company Ltd., formerly known as Zurich International (Bermuda), Ltd., is a Swiss company with its principal place of business in Zurich, Switzerland. Upon information and belief, Defendant Zurich Reinsurance Company Ltd. does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Zurich Reinsurance Company, Ltd. issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

53.     Upon information and belief, Defendant Continental Insurance Company, individually and as successor to Harbor Insurance Company and The Continental Insurance

Company, is a Pennsylvania corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Defendant Continental Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

54.     Upon information and belief, Defendant Columbia Casualty Company, is a Illinois corporation with its principal place of business in Chicago, Illinois. Upon information and belief, Defendant Columbia Casualty Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

55.     Upon information and belief, Defendant Federal Insurance Company, is an Indiana company with its principal place of business in Whitehouse Station, New Jersey. Upon information and belief, Defendant Federal Insurance Company is licensed to do business and does business in South Carolina—including without limitation by insuring risks in South Carolina—and issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, allege covered property damage, bodily injury, or personal injury, or some combination thereof.

56.     Upon information and belief, Defendant Great Lakes Reinsurance (UK) PLC is organized under the laws of the United Kingdom with its principal place of business in London, England. Upon information and belief, Defendant Great Lakes Reinsurance (UK) PLC does

business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Great Lakes Reinsurance (UK) PLC issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, alleged covered property damage, bodily injury, or personal injury, or some combination thereof.

57.    Upon information and belief, Defendant Oakwood Insurance Company, as successor by merger to Central National Insurance Company of Omaha, is a Tennessee corporation with its principal place of business in Glastonbury, Connecticut. Upon information and belief, Defendant Oakwood Insurance Company does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Oakwood Insurance Company issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, alleged covered property damage, bodily injury, or personal injury, or some combination thereof.

58.    Upon information and belief, Defendant Swiss Re Asia Pte. Ltd., as successor to European General Reinsurance Company of Zurich, is organized under the laws of Singapore with its principal place of business in Singapore. Upon information and belief, Defendant Swiss Re Asia Pte. Ltd. does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Swiss Re Asia Pte. Ltd. issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, alleged covered property damage, bodily injury, or personal injury, or some combination thereof.

59.    Upon information and belief, Defendant Swiss Reinsurance Company Ltd. is organized under the laws of Switzerland with its principal place of business in Switzerland. Upon

information and belief, Defendant Swiss Reinsurance Company Ltd. does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Swiss Reinsurance Company Ltd. issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, alleged covered property damage, bodily injury, or personal injury, or some combination thereof.

60.    Upon information and belief, Defendant AXA Belgium, as successor by merger to Royale Belge S.A. is organized under the laws of Belgium with its principal place of business in Brussels, Belgium. Upon information and belief, Defendant AXA Belgium does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant AXA Belgium issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, alleged covered property damage, bodily injury, or personal injury, or some combination thereof.

61.    Upon information and belief, Defendant Seguros Banorte, S.A. de C.V., as successor in interest to Seguros La Republica, SA is organized under the laws of Mexico with its principal place of business in Mexico. Upon information and belief, Defendant Seguros Banorte, S.A. de C.V. does business in South Carolina—including without limitation by insuring risks in South Carolina. Upon information and belief, Defendant Seguros Banorte, S.A. de C.V. issued or acquired responsibility for insurance policies issued to 3M for certain time frames during which the PFAS Claims, including those in the AFFF MDL, alleged covered property damage, bodily injury, or personal injury, or some combination thereof.

## JURISDICTION

62.    This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Complete diversity exists because no defendant is domiciled in the same state as 3M (Minnesota

and Delaware). The amount in controversy in this action substantially exceeds the jurisdictional threshold of $75,000.

63.    This Court has personal jurisdiction over each of the Insurers because, among other things, each Insurer has purposefully availed itself of the Court's jurisdiction by (1) engaging in substantial business activities in this State, including selling insurance to South Carolina policyholders; (2) having insured, and continuing to insure, risks located in South Carolina through, among other things, issuing policies for the benefit of 3M; (3) including South Carolina within the coverage territory of each of the policies at issue in this action, thereby insuring South Carolina risks relating to 3M's operations, products, and interests in or relating to South Carolina; and (4) promising though their respective policies to provide insurance benefits in or relating to South Carolina, including by paying damages and/or providing a defense or paying defense costs with respect to underlying suits brought in South Carolina, by South Carolina claimants, or affecting residents, businesses, property, or interests in South Carolina, including AFFF Suits filed in or from this State. Put another way, Insurers contracted with 3M to provide nationwide or worldwide coverage for liability claims which may arise against 3M during the policy period. Insurers also knew that, by doing so, such coverage could require them to provide indemnity for claims arising under those policies litigated in South Carolina. Such conduct "constitutes purposeful availment of the privilege of conducting activities in South Carolina." *See Tyco Fire Products LP v. AIU Insurance Company, et al.*, C.A. Nos. 2:18-2873, 2:23-cv-02384, 2023 WL 6846676, at *6 (D.S.C. Oct. 17, 2023). Further, many cases in the AFFF MDL were directly filed into the MDL identifying the District of South Carolina as their home venue or filed by claimants in South Carolina state courts and removed to this Court. *Id.* at 12. Coverage for such cases is at issue here.

64.　　Certain Insurers additionally have availed themselves of this Court's jurisdiction by consenting to submit to jurisdiction in South Carolina by selling insurance policies with service of suit clauses that require their submission to the jurisdiction of any competent court selected by 3M.

65.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (1) each Insurer is subject to personal jurisdiction in this District; and (2) a substantial part of the events or omissions giving rise to this action occurred in this District because, among other things, each Insurer issued policies to 3M that promise to provide insurance benefits relating to alleged legal liabilities that have arisen or may arise in this State. Further, venue is proper as this District is where the AFFF MDL is venued and there is a substantial overlap between the facts developed in the AFFF MDL and the scope of the Insurers' respective obligations for the lawsuits in the AFFF MDL. Many of the lawsuits for which 3M seeks coverage in this action were directly filed in South Carolina state and federal courts or have been filed in the AFFF MDL pending in this District and identify this District as their "Home Venue." Indeed, pursuant to this Court's Case Management Order No. 3 ("CMO 3"), 3M states that but for CMO 3 permitting direct filing in the United States District Court for the District of South Carolina, Charleston Division, 3M would have filed this Complaint in the United States District Court for the District of South Carolina. Further, in accordance with CMO 3, 3M hereby designates the United States District Court for the District of South Carolina as the "Home Venue," as this case may have originally been filed there.

## FACTUAL BACKGROUND

### A.　　THE PFAS CLAIMS

66.　　Since at least the 1950s, 3M has manufactured and sold PFAS compounds for commercial use, which were used in several applications varying over time, including AFFF. Over time, 3M has phased out certain PFAS chemistries, such as the "long chain" or "C-8" chemistries

like perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS") and began to use different PFAS compounds as ingredients in various products, including "short chain" or "C-4" PFAS compounds such as perfluorobutane sulfonic acid ("PFBS"). In December 2022, 3M announced it would exit all PFAS manufacturing by the end of 2025 and work to discontinue the use of PFAS across its product portfolio by the end of 2025.

67.    In recent years, thousands of claimants have brought lawsuits against 3M seeking damages for property damage, bodily injury, or personal injury, or some combination thereof, allegedly stemming from the use, spill, and/or storage of products containing 3M-manufactured PFAS. To date, the vast majority of PFAS Claims brought against 3M have involved AFFF, which contained certain PFAS substances such as the "long chain" PFOS and PFOA.

68.    Claimants have also brought lawsuits against 3M seeking damages for property damage, bodily injury, or personal injury, or some combination thereof, allegedly stemming from 3M's operations or activities in and around certain 3M facilities in which PFAS was historically manufactured, used, or spilled. Such facilities include without limitation 3M sites in and around Cottage Grove, Minnesota; Decatur, Alabama; Guin, Alabama; Springfield, Missouri; Cordova, Illinois; Corona, California; Antwerp, Belgium (a/k/a Zwijndrecht facility); and Gendorf, Germany.

69.    As of October 2024, numerous lawsuits (including dozens of putative class actions and hundreds of public water system cases) have been brought against 3M (along with other defendants) alleging property damage, bodily injury, or personal injury, or some combination thereof, from PFAS exposure allegedly arising from AFFF products and/or 3M's operations or activities related to AFFF. Although such AFFF-related claims have been filed in various state and federal courts, the vast majority of such claims have been consolidated in this Court into the AFFF

MDL. Additional AFFF-related claims are expected to be filed or transferred to the AFFF MDL in the future.

70.     In June 2023, 3M approved a proposed class-action settlement in the AFFF MDL aimed at resolving certain AFFF-related PFAS Claims brought by hundreds of public water systems ("PWS"), including those PWS claims not yet filed in the AFFF MDL (the "PWS Settlement"). The PWS claims allege that the use of 3M's AFFF products resulted in property damage, including damage to groundwater and surface water resources utilized by the PWS, and resulting in their incurrence of significant short-term and long-term treatment costs. The AFFF MDL Court approved the PWS Settlement in March 2024. The PWS Settlement has resulted in payments by 3M of approximately $2.7 billion to date, obligates 3M to make an additional payment of $1.75 billion in 2025, and will lead to estimated total payments by 3M of between $10.5 billion and $12.5 billion by 2036.

71.     Notwithstanding the PWS Settlement, other claimants (*i.e.*, who are not subject to the PWS Settlement) continue to file and litigate AFFF-related PFAS Claims against 3M in the AFFF MDL, and in various state courts. Accordingly, 3M has incurred, and continues to incur, the costs of defending such PFAS Claims, and has entered, and may continue to enter, into additional settlements to resolve such PFAS Claims.

72.     3M also continues to face PFAS Claims filed by claimants that allege property damage, bodily injury, or personal injury, or some combination thereof, allegedly based on other 3M products, products that contained 3M-manufacturered PFAS (such as Scotchgard™), and/or 3M's operations or activities. 3M has incurred, and continues to incur, the costs of defending such additional PFAS Claims, and has entered, and may continue to enter, into additional settlements to resolve such PFAS Claims.

**B.    THE PRE-1986 POLICIES AND THE PRE-1986 INSURERS' FAILURE TO ACKNOWLEDGE THEIR COVERAGE OBLIGATIONS**

73.    For decades, 3M purchased excess and umbrella liability insurance policies from the Pre-1986 Insurers to protect 3M against, among other things, product liability claims that allege property damage, bodily injury, or personal injury, or some combination thereof, during the Pre-1986 Insurers' policy periods, caused by an occurrence. The policies sold by the Pre-1986 Insurers include, without limitation, the Pre-1986 Policies listed in the attached Exhibit A.

74.    The Pre-1986 Policies are standard-form insurance policies that, once attached, generally require the Pre-1986 Insurers to pay any settlements or judgments that 3M incurs in connection with covered liability claims, up to the applicable limits of the Pre-1986 Policies. Certain Pre-1986 Insurers also have a duty to defend 3M, or the duty to pay or reimburse the defense costs that 3M has incurred, in connection with any claims that raise the potential for covered liabilities based on the allegations in the underlying complaints, regardless of whether those allegations are false, fraudulent, or groundless.

75.    The PFAS Claims, including those in the AFFF MDL, collectively allege property damage, bodily injury, or personal injury, or some combination thereof, during each of the Pre-1986 Policies, fall squarely within the scope of coverage promised in the Pre-1986 Policies, and are not subject to any limitations or exclusions that would otherwise negate coverage. Moreover, 3M has already incurred liabilities in connection with the PFAS Claims, including those in the AFFF MDL, that are sufficient to attach (and indeed, far exceed) the coverage available to 3M under the Pre-1986 Policies. Therefore, the Pre-1986 Insurers are contractually obligated to provide defense and/or indemnity coverage to 3M in connection with the PFAS Claims, in accordance with the terms of the Pre-1986 Policies.

76. 3M provided timely notice of all PFAS Claims to the Pre-1986 Insurers, have kept the Pre-1986 Insurers apprised of material developments in the underlying litigations (including 3M's settlement efforts), and have satisfied all terms, conditions, or prerequisites for coverage under the Pre-1986 Policies.

77. Notwithstanding their obligations, the Pre-1986 Insurers have failed and/or refused to provide and/or acknowledge the defense and/or indemnity coverage owed to 3M in connection with the PFAS Claims, including without limitation, their defense and/or indemnity obligations with respect to the AFFF MDL and the PWS Settlement.

## C.  THE OCCURRENCE POLICIES AND THE OCCURRENCE INSURERS' FAILURE TO ACKNOWLEDGE THEIR COVERAGE OBLIGATIONS

78. After 1986, 3M purchased insurance policies from the Occurrence Insurers to protect 3M against, among other things, liability claims that allege property damage, bodily injury, or personal injury, or some combination thereof, arising out of occurrences, or alleged in claims, that 3M reports to the Occurrence Insurers during the Occurrence Insurers' policy periods, caused by an occurrence. The policies sold by the Occurrence Insurers include, without limitation, the Occurrence Policies listed in the attached Exhibit A.

79. The Occurrence Policies generally require the Occurrence Insurers to pay any settlements or judgments that 3M incurs in connection with covered liability claims, up to the applicable limits of the Occurrence Policies. The Occurrence Insurers also have a duty to pay or reimburse the defense costs that 3M has incurred.

80. The PFAS Claims, including those in the AFFF MDL, arise out of an occurrence or occurrences that were first reported to the Occurrence Insurers during the policy period of the Occurrence Policies, and fall squarely within the scope of coverage promised in the Occurrence Policies, and are not subject to any limitations or exclusions that would otherwise negate coverage.

Moreover, 3M has already incurred liabilities in connection with the PFAS Claims, including those in the AFFF MDL, that are sufficient to attach (and indeed, far exceed) the coverage available to 3M under the Occurrence Policies. Therefore, the Occurrence Insurers are contractually obligated to provide defense and/or indemnity coverage to 3M in connection with the PFAS Claims, in accordance with the terms of the Occurrence Policies.

81.     3M provided timely notice of all PFAS Claims to the Occurrence Insurers, have kept the Occurrence Insurers apprised of material developments in the underlying litigations (including 3M's settlement efforts), and have satisfied all terms, conditions, or prerequisites for coverage under the Occurrence Policies.

82.     Notwithstanding their obligations, the Occurrence Insurers have failed and/or refused to provide and/or acknowledge the defense and/or indemnity coverage owed to 3M in connection with the PFAS Claims, including without limitation, their defense and/or indemnity obligations with respect to the AFFF MDL and the PWS Settlement.

### FIRST CLAIM FOR RELIEF
**(Declaratory Judgment – All Pre-1986 Insurers)**

83.     3M restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

84.     Pursuant to 28 U.S.C. § 2201(a), 3M requests a judicial declaration of the rights, obligations, status, and other legal relations of the parties with respect to the Pre-1986 Policies and the coverage available to 3M for the defense costs and/or liabilities that 3M has incurred, and may continue to incur, in connection with the PFAS Claims, including those in the AFFF MDL.

85.     Pursuant to the Pre-1986 Policies, the Pre-1986 Insurers are obligated to pay all defense costs and/or to indemnify all settlements and judgments that 3M incurs with respect to PFAS Claims, including those in the AFFF MDL, alleging property damage, bodily injury, or

personal injury, or some combination thereof, during the Pre-1986 Insurers' policy periods, until the Pre-1986 Policies are exhausted by the indemnification of settlements and/or judgments equal the applicable limits of the Pre-1986 Policies.

86.    Upon information and belief, the Pre-1986 Insurers dispute their coverage obligations to 3M and deny any responsibility to provide defense and/or indemnity coverage to 3M in connection with the PFAS Claims, including those in the AFFF MDL.

87.    As a result of the foregoing, an actual and justiciable controversy currently exists between 3M and the Pre-1986 Insurers regarding the proper interpretation of the Pre-1986 Policies and the rights, obligations, status, and legal relations of the parties with respect to the coverage available for the PFAS Claims, including those in the AFFF MDL. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

88.    The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

## SECOND CLAIM FOR RELIEF
### (Breach Of Contract – All Pre-1986 Insurers)

89.    3M restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

90.    The Pre-1986 Policies are valid and enforceable insurance contracts.

91.    Pursuant to the Pre-1986 Policies, the Pre-1986 Insurers are obligated to pay all defense costs and/or to indemnify all settlements and judgments that 3M incurs with respect to PFAS Claims, including those in the AFFF MDL, alleging property damage, bodily injury, or personal injury, or some combination thereof, during the Pre-1986 Insurers' policy periods, until the Pre-1986 Policies are exhausted by the indemnification of settlements and/or judgments equal the applicable limits of the Pre-1986 Policies.

92.     3M provided timely notice of all PFAS Claims to the Pre-1986 Insurers, have kept the Pre-1986 Insurers apprised of material developments in the underlying litigations (including 3M's defense and settlement efforts), and have satisfied all terms, conditions, or prerequisites for coverage under the Pre-1986 Policies.

93.     3M has incurred, and continues to incur, defense costs and/or liabilities that the Pre-1986 Insurers are responsible for paying pursuant to the Pre-1986 Policies, including without limitation, payments toward the PWS Settlement.

94.     Notwithstanding their obligations, the Pre-1986 Insurers have failed and/or refused to provide and/or acknowledge the defense and/or indemnity coverage that they owe to 3M in connection with the PFAS Claims, including those in the AFFF MDL, and including without limitation, their contributions toward the indemnification of the PWS Settlement.

95.     As a direct and proximate result of the Pre-1986 Insurers' anticipatory repudiations and/or breaches, 3M has suffered and will continue suffer damages in an amount to be determined at trial, which includes, without limitation, the amount of any defense costs 3M has incurred or will incur to defend the PFAS Claims and/or the amount of any liabilities that 3M has incurred or will incur in connection with the PFAS Claims, including the PWS Settlement and those PFAS Claims brought in connection with the AFFF MDL, without the benefit of the insurance owed by the Pre-1986 Insurers.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment – All Occurrence Insurers)

96.     3M restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

97.     Pursuant to 28 U.S.C. § 2201(a), 3M requests a judicial declaration of the rights, obligations, status, and other legal relations of the parties with respect to the Occurrence Policies

and the coverage available to 3M for the defense costs and/or liabilities that 3M has incurred, and may continue to incur, in connection with the PFAS Claims, including those in the AFFF MDL.

98.     Pursuant to the Occurrence Policies, the Occurrence Insurers are obligated to pay all defense costs and/or to indemnify all settlements and judgments that 3M incurs with respect to PFAS Claims, including those in the AFFF MDL, alleging property damage, bodily injury, or personal injury, or some combination thereof, caused by an occurrence, arising out of claims or occurrences first reported during the Occurrence Insurers' policy periods, until the Occurrence Policies are exhausted by the indemnification of settlements and/or judgments equal the applicable limits of the Occurrence Policies.

99.     Upon information and belief, the Occurrence Insurers dispute their coverage obligations to 3M and deny any responsibility to provide defense and/or indemnity coverage to 3M in connection with the PFAS Claims, including those in the AFFF MDL.

100.    As a result of the foregoing, an actual and justiciable controversy currently exists between 3M and the Occurrence Insurers regarding the proper interpretation of the Occurrence Policies and the rights, obligations, status, and legal relations of the parties with respect to the coverage available for the PFAS Claims, including those in the AFFF MDL. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

101.    The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

## FOURTH CLAIM FOR RELIEF
### (Breach Of Contract – All Occurrence Insurers)

102.    3M restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

103.    The Occurrence Policies are valid and enforceable insurance contracts.

104.    Pursuant to the Occurrence Policies, the Occurrence Insurers are obligated to pay all defense costs and/or to indemnify all settlements and judgments that 3M incurs with respect to PFAS Claims, including those in the AFFF MDL, alleging property damage, bodily injury, or personal injury, or some combination thereof, arising out of claims or occurrences reported during the Occurrence Insurers' policy periods, until the Occurrence Policies are exhausted by the indemnification of settlements and/or judgments equal the applicable limits of the Occurrence Policies.

105.    3M provided timely notice of all PFAS Claims to the Occurrence Insurers, have kept the Occurrence Insurers apprised of material developments in the underlying litigations (including 3M's defense and settlement efforts), and have satisfied all terms, conditions, or prerequisites for coverage under the Occurrence Policies.

106.    3M has incurred, and continues to incur, defense costs and/or liabilities that the Occurrence Insurers are responsible for paying pursuant to the Occurrence Policies, including without limitation, payments toward the PWS Settlement.

107.    Notwithstanding their obligations, the Occurrence Insurers have failed and/or refused to provide and/or acknowledge the defense and/or indemnity coverage that they owe to 3M in connection with the PFAS Claims, including those in the AFFF MDL, and including without limitation, their contributions toward the indemnification of the PWS Settlement.

108.    As a direct and proximate result of the Occurrence Insurers' anticipatory repudiations and/or breaches, 3M has suffered and will continue suffer damages in an amount to be determined at trial, which includes, without limitation, the amount of any defense costs 3M has incurred or will incur to defend the PFAS Claims and/or the amount of any liabilities that 3M has incurred or will incur in connection with the PFAS Claims, including the PWS Settlement and

those PFAS Claims brought in connection with the AFFF MDL, without the benefit of the insurance owed by the Occurrence Insurers.

## JURY DEMAND

3M demands a trial by jury on all issues raised in this Complaint that are so triable, and that such jury consist of twelve (12) jurors.

## PRAYER FOR RELIEF

**WHEREFORE**, 3M prays for judgment as follows:

1.      On the First Claim for Relief, that this Court enter a declaratory judgment in favor of 3M, and against the Pre-1986 Insurers, confirming that:

a.      With respect to the Pre-1986 Insurers that sold Pre-1986 Policies providing for a duty to defend or a duty to pay defense costs, such Pre-1986 Insurers have an obligation to pay all defense costs that 3M has incurred and will incur in defense of PFAS Claims, including those in the AFFF MDL, that allege property damage, bodily injury, or personal injury, or some combination thereof, during the Pre-1986 Insurers' policy periods, and that such Pre-1986 Insurers shall continue to have such defense obligations until their Pre-1986 Policies are exhausted through the indemnification of settlements and/or judgments equal the applicable limits of the Pre-1986 Policies;

b.      With respect to all Pre-1986 Insurers, that the Pre-1986 Insurers have a duty to indemnify 3M for any settlements or judgments that 3M has become or will become legally obligated to pay in connection with PFAS Claims, including those in the AFFF MDL, that trigger the Pre-1986 Insurers' respective policies, until the triggered Pre-1986 Policies are exhausted through the indemnification of settlements and/or judgments equal the applicable limits of the triggered Pre-1986 Policies;

2.     On the Second Claim for Relief, that this Court enter judgment against the Pre-1986 Insurers for breach of contract for failing/refusing to honor their coverage obligations with respect to the PFAS Claims, including those in the AFFF MDL, and awarding 3M damages, together with costs and pre- and post-judgment interest, in an amount to be determined at trial;

3.     On the Third Claim for Relief, that this Court enter a declaratory judgment in favor of 3M, and against the Occurrence Insurers, confirming that:

a.     The Occurrence Insurers have an obligation to pay all defense costs that 3M has incurred and will incur in defense of PFAS Claims, including those in the AFFF MDL, that allege property damage, bodily injury, or personal injury, or some combination thereof, during the Occurrence Insurers' policy periods arising out of and occurrence or occurrences first reported during the Occurrence Policies' policy periods, and that such Occurrence Insurers shall continue to have such defense obligations until their Occurrence Policies are exhausted through the indemnification of settlements and/or judgments equal the applicable limits of the Occurrence Policies;

b.     With respect to all Occurrence Insurers, that the Occurrence Insurers have a duty to indemnify 3M for any settlements or judgments that 3M has become or will become legally obligated to pay in connection with PFAS Claims, including those in the AFFF MDL, that trigger the Occurrence Insurers' respective policies, until the triggered Occurrence Policies are exhausted through the indemnification of settlements and/or judgments equal the applicable limits of the triggered Occurrence Policies;

4.     On the Fourth Claim for Relief, that this Court enter judgment against the Occurrence Insurers for breach of contract for failing/refusing to honor their coverage obligations

with respect to the PFAS Claims, including those in the AFFF MDL, and awarding 3M damages, together with costs and pre- and post-judgment interest, in an amount to be determined at trial;

5.    On all Claims for Relief, that this Court award 3M its reasonable attorneys' fees to the extent permitted by law;

6.    On all Claims for Relief, that this Court award 3M its costs to the extent permitted by law; and

7.    3M requests such other and further relief as this Court may deem just and proper.

DATED:    October 25, 2024    Respectfully Submitted,

*/s/ Tommy Tobin*

PERKINS COIE  LLP

Tommy Tobin, D.S.C. Bar #12703
James M. Davis (*pro hac vice* forthcoming)
J. Camille Fisher (*pro hac vice* forthcoming)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
TTobin@perkinscoie.com
JamesDavis@perkinscoie.com
CFisher@perkinscoie.com

Vivek Chopra (*pro hac vice* forthcoming)
Jonathan G. Hardin (*pro hac vice* forthcoming)
Michael T. Sharkey (*pro hac vice* forthcoming)
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
VChopra@perkinscoie.com
JHardin@perkinscoie.com
MSharkey@perkinscoie.com

Bradley H. Dlatt (*pro hac vice* forthcoming)
110 North Wacker Drive, Suite 3400
Chicago, IL 60606-1511
Telephone: (312) 324-8400
BDlatt@perkinscoie.com

*Counsel for 3M Company*